**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

DARRELL PATRICK,

Plaintiff,

v.

BOINGO WIRELESS, INC., LANCE ROSENZWEIG, MIKE FINLEY, MAURY AUSTIN, ROY H. CHESTNUTT, MICHELE V. CHOKA, CHUCK DAVIS, DAVID HAGAN, TERRELL JONES, and KATHY MISUNAS,

Defendants.

Civil Action No.

**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**

**JURY TRIAL DEMANDED**

Plaintiff Darrell Patrick ("Plaintiff") by and through his undersigned attorneys, brings this action on behalf of himself, and alleges the following based upon personal knowledge as to those allegations concerning Plaintiff and, as to all other matters, upon the investigation of counsel, which includes, without limitation: (a) review and analysis of public filings made by Boingo Wireless, Inc. ("Boingo" or the "Company") and other related parties and non-parties with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and other publications disseminated by certain of the Defendants (defined below) and other related non-parties; (c) review of news articles, shareholder communications, and postings on the Company's website concerning the Company's public statements; and (d) review of other publicly available information concerning Boingo and the Defendants.

## SUMMARY OF THE ACTION

1. This is an action brought by Plaintiff against Boingo and the Company's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934, 15.U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9, in connection with the proposed sale of the Company to affiliates of Digital Colony Management, LLC.

2. On February 26, 2021, the Company entered into an Agreement and Plan of Merger (the "Merger Agreement") with White Sands Parent, Inc. ("Parent") and White Sands Bidco, Inc. ("Merger Sub" and together with Parent "White Sands"). Pursuant to the terms of the Merger Agreement the Company's shareholders will receive $14.00 in cash for each share of Boingo common stock owned (the "Merger Consideration").

3. On April 28, 2021, in order to convince the Company's shareholders to vote in favor of the Proposed Transaction, the Board authorized the filing of a materially incomplete and misleading proxy statement with the SEC (the "Proxy Statement"), in violation of Sections 14(a) and 20(a) of the Exchange Act.

4. For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Boingo and the Board for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9. Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Boingo shareholders before the vote on the Proposed Transaction or, in the event the Proposed Transaction is consummated, recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over all claims asserted herein pursuant to Section 27 of the Exchange Act, 15 U.S.C § 78aa, and 28 U.S.C. § 1331, as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

6. This Court has personal jurisdiction over all of the Defendants because each is either a corporation that conducts business in, solicits shareholders in, and/or maintains operations within, this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## THE PARTIES

8. Plaintiff is, and has been at all times relevant hereto, the owner of Boingo shares.

9. Defendant Boingo is incorporated under the laws of Delaware and has its principal executive offices located at 10960 Wilshire Blvd., 23rd Floor, Los Angeles, California, 90024. The Company's common stock trades on the NASDAQ under the symbol "WIFI."

10. Defendant Lance Rosenzweig ("Rosenzweig") is and has been the Chairman of the Board of Directors of Boingo at all times during the relevant time period.

11. Defendant Mike Finley ("Finley") is and has been the Chief Executive Officer ("CEO") and a director of Boingo at all times during the relevant time period.

12. Defendant Maury Austin ("Austin") is and has been a director of Boingo at all times during the relevant time period.

13. Defendant Roy H. Chestnutt ("Chestnutt") is and has been a director of Boingo at all times during the relevant time period.

14. Defendant Michele V. Choka ("Choka") is and has been a director of Boingo at all times during the relevant time period.

15. Defendant Chuck Davis ("Davis") is and has been a director of Boingo at all times during the relevant time period.

16. Defendant David Hagan ("Hagan") is and has been a director of Boingo at all times during the relevant time period.

17. Defendant Terrell Jones ("Jones") is and has been a director of Boingo at all times during the relevant time period.

18. Defendant Kathy Misunas ("Misunas") is and has been a director of Boingo at all times during the relevant time period.

19. Defendants Rosenzweig, Finley, Austin, Chestnutt, Choka, Davis, Hagan, Jones and Misunas are collectively referred to herein as the "Individual Defendants."

20. The Individual Defendants, along with Defendant Boingo, are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background of the Company

21. Boingo is a global provider of wireless connectivity solutions for smartphones, tablets, laptops, wearables and other wireless-enabled consumer devices. Boingo generates revenue from wholesale cellular and Wi-Fi offerings, which are targeted towards carriers, venues, and other wholesale partners, and military, retail, and advertising offerings, which are retail products targeted towards customers. Wholesale offerings include distributed antenna

systems, towers, and small cells, which are cellular extension networks, private networks and emerging technologies, multifamily, carrier offload, Wi-Fi roaming, value-added services, private label Wi-Fi, and location-based services. Retail products include Wi-Fi services for military personnel living in the barracks of the U.S. Army, Air Force, and Marine Corps on bases around the world, and Wi-Fi subscriptions and day passes that provide access to commercial hotspots worldwide.

**<u>The Company Announces the Proposed Transaction</u>**

22. On March 1, 2021, the Company jointly issued a press release announcing the Proposed Transaction. The press release stated in part:

> LOS ANGELES – March 1, 2021 – Boingo Wireless, Inc. ("Boingo" or "the Company") (NASDAQ: WIFI), the leading distributed antenna system ("DAS") and Wi-Fi provider that serves carriers, consumers, property owners and advertisers worldwide, announced today that it has entered into a definitive agreement and plan of merger to be acquired by an affiliate of Digital Colony Management, LLC ("Digital Colony"). Upon completion of the transaction, Boingo will transition from a public company to a privately held company.
>
> Under the terms of the agreement, which has been unanimously approved by Boingo's Board of Directors, Digital Colony will acquire all the outstanding shares of Boingo common stock for $14.00 per share in cash through a merger, in a transaction valued at approximately $854 million, including the assumption of $199 million of Boingo's net debt obligations. The acquisition price represents a 23% premium to Boingo's closing price of $11.40 on February 26, 2021
>
> * * *
>
> The transaction, which is subject to the receipt of Boingo shareholder approval, regulatory approvals and other customary closing conditions, is expected to closed in the second quarter of 2021.
>
> TAP Advisors is serving as exclusive financial advisor and provided a fairness opinion to Boingo's Board of Directors in connection with the transaction and Gunderson Dettmer is serving as legal counsel. Credit Suisse is acting as lead financial advisor and Truist Securities Inc. is acting as co-financial advisor to Digital Colony in connection with the transaction. Debt financing for the transaction is being led by Truist Securities Inc. along with Joint Lead Arrangers

and Joint Bookrunners TD Securities and CIT. Simpson Thacher is serving as legal advisor to Digital Colony.

**FALSE AND MISLEADING STATEMENTS AND/OR MATERIAL OMISSIONS IN THE PROXY STATEMENT**

23. On April 28, 2021, the Company authorized the filing of the Proxy Statement with the SEC. The Proxy Statement recommends that the Company's shareholders vote in favor of the Proposed Transaction.

24. Defendants were obligated to carefully review the Proxy Statement prior to its filing with the SEC and dissemination to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's shareholders to make informed decisions regarding whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

**Material False and Misleading Statements or Material Misrepresentations or Omissions Regarding the Company's Financial Projections**

25. The Proxy Statement contains projections prepared by the Company's management concerning the Proposed Transaction, but fails to provide material information concerning such.

26. The SEC has repeatedly emphasized that disclosure of non-GAAP projections can be inherently misleading, and has therefore heightened its scrutiny of the use of such projections.[1] Indeed, on May 17, 2016, the SEC's Division of Corporation Finance released new

[1] *See, e.g.*, Nicolas Grabar and Sandra Flow, Non-GAAP Financial Measures: The SEC's Evolving Views, Harvard Law School Forum on Corporate Governance and Financial Regulation (June 24, 2016), *available at* https://corpgov.law.harvard.edu/2016/06/24/non-gaap-financial-measuresthesecs evolving-views/; Gretchen Morgenson, Fantasy Math Is Helping Companies Spin Losses Into Profits, N.Y. Times, Apr. 22, 2016, available at

and updated Compliance and Disclosure Interpretations ("C&DIs") on the use of non-GAAP financial measures that demonstrate the SEC's tightening policy.[2] One of the new C&DIs regarding forward-looking information, such as financial projections, explicitly requires companies to provide any reconciling metrics that are available without unreasonable efforts.

27. In order to make management's projections included in the Proxy Statement materially complete and not misleading, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures.

28. Specifically, with respect to the Company's projections, Boingo must disclose the line item projections for the financial metrics that were used to calculate the non-GAAP measures, including: (i) Adjusted EBITDA; (ii) Cash EBITDA; and (iii) Company Cash Flow.

29. Disclosure of the above information is vital to provide investors with the complete mix of information necessary to make an informed decision when voting on the Proposed Transaction. Specifically, the above information would provide shareholders with a better understanding of the analyses performed by the Company's financial advisor in support of its opinion.

**Material False and Misleading Statements or Material**
**Misrepresentations or Omissions Regarding the Financial Opinions**

30. The Proxy Statement contains the financial analyses and opinion of TAP Advisors, LLC ("TAP Advisors") concerning the Proposed Transaction, but fails to provide material information concerning such.

---

http://www.nytimes.com/2016/04/24/business/fantasy-mathis-helping-companies-spin-ossesinto-profits.html?_r=0.

[2] Non-GAAP Financial Measures, Compliance & Disclosure Interpretations, U.S. SECURITIES AND EXCHANGE COMMISSION (May 17, 2017), *available at* https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm.

31. With respect to TAP Advisors' *Leveraged Buyout Analysis*, the Proxy Statement fails to disclose the basis for TAP Advisors' assumptions of: (i) an 11% weighted average cost of capital; (ii) 2.0% to 3.0% perpetual growth rates of Boingo's terminal year; and (iii) a 2030 exit strategy.

32. With respect to TAP Advisors' *Selected Precedent Transactions Analysis*, the Proxy Statement fails to disclose: (i) the date of the closing of each selected transaction; and (ii) the total value of each transaction.

33. With respect to TAP Advisors' *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the unlevered free cash flows (including for each segment) used in TAP Advisor's analysis and all underlying line items; (ii) the Company's terminal values; (iii) the inputs and assumptions underlying TAP Advisors use of the discount rate ranges of 10.0% to 12.0%, 9.0% to 11.0%, and 10.5% to 12.5%; and (iv) the inputs and assumptions underlying TAP Advisors use pof perpetual growth rates of 2.0% to 3.0%.

34. With respect to TAP Advisors' *Premium Paid Analysis*, the Proxy Statement fails to disclose the premiums paid in the transactions observed in TAP Advisors' analysis.

35. With respect to TAP Advisors' Boingo *Wall Street Equity Research Analyst Stock Price Targets analysis*, the Proxy Statement fails to disclose the price targets observed in the analysis, as well as the sources thereof.

36. When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed. Moreover, the disclosure of projected financial information is material because it provides shareholders with a basis to project the future financial performance of a company and allows shareholders to

better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion.

37. Without the above described information, the Company's shareholders are unable to cast a fully informed vote on the Proposed Transactions. Accordingly, in order to provide shareholders with a complete mix of information, the omitted information described above should be disclosed.

**COUNT I**

**(Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder)**

38. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

39. Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

40. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that communications with stockholders in a recommendation statement shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

41. Defendants have issued the Proxy Statement with the intention of soliciting shareholders support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement, which fails to provide critical information regarding, among other things, the financial projections for the Company.

42. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

43. The Defendants knew or were negligent in not knowing that the Proxy Statement is materially misleading and omits material facts that are necessary to render it not misleading. The Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction.

44. The Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy Statement, rendering the sections of the Proxy Statement identified above to be materially incomplete and misleading. Indeed, the Defendants were required to be particularly attentive to the procedures followed in preparing the Proxy Statement and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

45. The Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement. The preparation of a Proxy Statement by corporate insiders containing

materially false or misleading statements or omitting a material fact constitutes negligence. The Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation of the Company's financial projections.

46. The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.

47. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**COUNT II**

**(Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act)**

48. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

49. The Individual Defendants acted as controlling persons of Boingo within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Boingo, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially

incomplete and misleading.

50. Each of the Individual Defendants was provided with, or had unlimited access to, copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

51. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in preparing this document.

52. In addition, as set forth in the Proxy Statement sets forth at length and described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

53. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

54. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

55. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. Directing the Individual Defendants to disseminate an Amendment to the Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

C. Directing Defendants to account to Plaintiff for all damages sustained because of the wrongs complained of herein;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

Dated: April 30, 2021

Respectfully submitted,

By: *<u>/s/ Joshua M. Lifshitz</u>*

Joshua M. Lifshitz
Email: jml@jlclasslaw.com
**LIFSHITZ LAW FIRM, P.C.**
1190 Broadway,
Hewlett, New York 11557
Telephone: (516) 493-9780
Facsimile: (516) 280-7376

*Attorneys for Plaintiff*